This is an appeal from summary judgment. *Page 104 
In 1990 Brewer State Junior College President Dr. Wayland DeWitt filed a complaint against Dr. Fred Gainous, Chancellor of the Alabama Department of Postsecondary Education. The complaint alleged that DeWitt tendered his resignation from his position by sending a letter to Gainous. He later attempted to rescind his resignation but was not allowed to do so by Gainous. DeWitt requested that the trial court find that the resignation was without effect and grant equitable relief accordingly.
The trial court subsequently entered a preliminary injunction, preventing Gainous from acting upon DeWitt's resignation pending a final hearing on the case. Both DeWitt and Gainous then filed motions for summary judgment. After an ore tenus proceeding was held on these motions, summary judgment was granted in favor of Gainous. The trial court also dissolved the preliminary injunction and set a hearing to determine the extent of damages to Gainous caused by the wrongfully issued injunction. Thus, fewer than all of the rights of the parties were adjudicated. Nevertheless, DeWitt filed an appeal from the grant of summary judgment. The trial court has determined that there is no just cause for delaying such an appeal, pursuant to Rule 54(b), Alabama Rules of Civil Procedure.
The dispositive issue before us is whether the trial court properly granted summary judgment in this case. We recognize that summary judgment is proper only when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Melton v. Perry County Bd. ofEduc., 562 So.2d 1841 (Ala.Civ.App. 1990). Here, the material facts of the case are undisputed. DeWitt argues that his attempted resignation from the presidency of Brewer State was ineffective under Alabama statutes and that Dr. Gainous was thus not entitled to judgment as a matter of law.
The record reveals the following pertinent events: DeWitt was appointed to his position as president of Brewer State in 1989, and tendered his letter of resignation on September 17, 1990. The letter stated that the resignation would be "effective no later than Monday, December 31, 1990, or until a successor is named prior to that date, or until you and I mutually agree upon a prior date of separation."
On September 26 Gainous sent a letter to DeWitt, formally accepting the resignation "effective December 31, 1990." On October 5 DeWitt sent a letter to Gainous, rescinding the resignation. Gainous sent a letter in reply, refusing to accept the rescission. The matter was then brought before a meeting of the State Board of Education on October 25, and the board members voted to "reaffirm" Gainous's acceptance of DeWitt's resignation. DeWitt subsequently filed his complaint against Gainous.
On appeal, DeWitt contends that Gainous was not authorized to accept his resignation, and further contends that the Board's acceptance was null because he withdrew the resignation by letter prior to the October 25 meeting. DeWitt concludes that he successfully rescinded his resignation and is therefore entitled to continue in his position.
Under Article 5, § 16-40-111.4(3), Code 1975, the State Board of Education is empowered to "appoint the president of each junior college and trade school, each president to serve at the pleasure of the board." As this section makes clear, the presidents of Alabama's junior colleges are at-will employees of the state. An at-will employee may resign from his job at any time or may tender a prospective resignation. However, a prospective resignation may not be withdrawn after it has been unconditionally accepted. Ex parte Rhea, 426 So.2d 838 (Ala. 1982).
In his motion for summary judgment, Gainous claimed that the Board has delegated to him the authority to accept the resignation of junior college presidents, subject to the Board's reaffirmance at its regular meetings. In an affidavit introduced in support of Gainous's motion, State Board of Education Vice-president John M. *Page 105 
Tyson stated that "the Chancellor possesses the authority, as chief executive officer of the State Board of Education for post-secondary education matters, to accept and thereby make effective any notice of resignation or retirement by a State two-year college president who should choose to submit such a notice to the Chancellor." Tyson also presented several letters of resignation from past junior college presidents to evidence "the practice of the Chancellor of accepting and thereby effectuating notices of voluntary relinquishment of presidential positions by State two-year college presidents who are desirous of submitting such notices."
Although the Board alone is empowered to appoint or terminate a president to a junior college in Alabama, it may assign any such duties to the chancellor as will assist the Board in carrying out its authority over the trade schools. §§16-60-111.1, -111.2. Indeed, the Board is required to delegate decision-making authority to the chancellor where it is not precluded by statute from doing so. § 16-60-111.6. Article 5 does not require that a junior college president tender his resignation directly to the Board, and does not prevent the chancellor from accepting such a resignation if authorized to do so by the Board. Article 5 charges the chancellor with the authority and responsibility for the "operation, management, control, supervision, maintenance, regulation, improvement and enlargement" of the junior colleges, subject to the Board's approval, and may take any and all actions necessary and proper to administer the policies of the Board. § 16-60-111.5(4).
It is apparent that Gainous was properly authorized by the Board to act as its agent in accepting DeWitt's resignation, just as he had accepted the past resignations of other junior college presidents in this state. DeWitt himself recognized this authority by submitting his letter of resignation to Gainous, rather than to the Board, and by attempting to rescind his resignation by again writing to Gainous.
However, Gainous's authority was not unconditional. The record shows that Gainous's acceptance of DeWitt's resignation was not final until it was "reaffirmed" by the Board's vote. If the Board had declined to give its confirmation, DeWitt's resignation would not have been effective.
A prospective resignation that is notunconditionally accepted may be withdrawn prior to its effective date. City of Dothan v. Lucas, 47 Ala. App. 336,254 So.2d 341 (Ala.Civ.App. 1971). Here, Gainous's acceptance of DeWitt's resignation could be effective only if the Board gave its final approval. By submitting his letter of rescission prior to the Board's October 25 meeting, DeWitt successfully withdrew his resignation before its unconditional acceptance.
In view of the foregoing, we find that Gainous was not entitled to judgment as a matter of law; thus, summary judgment was improperly granted. The summary judgment is reversed and the cause is remanded for further proceedings.
The foregoing opinion was prepared by Retired Appellate Judge ROBERT P. BRADLEY while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
REVERSED AND REMANDED WITH INSTRUCTIONS.
All the Judges concur.