Bevill State Community College ("BSCC") terminated the employment of Linda Combs, a part-time, tenured instructor. A Fair Dismissal Act panel upheld Combs's termination.[1] Combs appealed that decision to the circuit court, which affirmed the panel's decision. She then appealed to the Court of Civil Appeals. That court reversed the trial court's judgment and remanded the cause for the panel "to redetermine the propriety of the termination of Combs's employment in light of the dismissal policy contained in the BSCC personnel handbook." Combs v.Wade, 957 So.2d 464, 476 (Ala.Civ.App. 2005). We now reverse the Court of Civil Appeals' judgment and reinstate the panel's decision.
 I. Facts and Procedural History
BSCC is funded in part by the Alabama Special Education Trust Fund ("the SETF"), which is dependent on tax revenues. BSCC has four campuses in Alabama — in Fayette, Hamilton, Jasper, and Sumiton. The main campus is located in Sumiton. Dr. Harold Wade is the president of BSCC and has served in that capacity for approximately 30 years.
In early 2001, President Wade heard informal reports that tax revenues being deposited into the SETF were decreasing. He instructed his administrators to begin cost-cutting measures that did not involve dismissing personnel. By early spring 2001, the Governor officially declared the SETF in proration and reduced the funding to higher education by 6.2% for that fiscal year. President Wade informed all BSCC employees that, if proration remained at the level of 6.2% to 8%, BSCC could operate on that level of proration by implementing various cost-cutting measures, without dismissing any personnel.
Later in the spring of 2001, however, President Wade was notified that, because higher education would absorb all the reduction in education funding necessitated by the decrease in tax revenues, the proration level for BSCC could reach 11.8%. President Wade concluded that at such a level he would have to dismiss some personnel. He asked his associate deans and administrators to review BSCC's instructional programs and to recommend reductions *Page 479 
in personnel that would have a minimal impact on students. In doing so, President Wade asked them to focus on eliminating probationary and part-time employees.
Dr. Camilla Benton, the academic dean for the Jasper campus of BSCC, recommended consolidating the child-development programs at the Sumiton and Jasper campuses because those campuses are only 15 miles apart. At that time, Linda Combs was teaching several child-development classes at the Sumiton campus. Combs had been a child-development teacher at BSCC for 11 years. Each semester, she had taught 3 or 4 child-development courses (for 9 to 12 credit hours) on the Sumiton campus. She also had, at times, taught child-development classes on the Jasper campus. Combs's contract with BSCC states that it is a "contract of employment, full time"; however, all the parties agree that Combs had always been paid as a part-time instructor and that she was considered a part-time instructor. Despite her status as a part-time instructor, because of the number of years she had taught at BSCC she was a nonprobationary, or tenured, instructor.
Valerie Vann, a full-time employee at the Jasper campus, performed various administrative duties as the director of continuing education, the manager of a USDA food program, the coordinator of a summer youth program, the supervisor of a child-care facility, the director of a paralegal program, and a dormitory resident manager. The record reflects that Vann's employment contracts defined her position as (1) "Continuing Education/Child Care Coordinator" from September 1998 to August 2000, (2) "Director of Childcare Program Childcare Center/OAD[2] Continuing Education" from September 2000 to August 2002, and (3) "Director of Certificate, Continuing Education and Child Care Programs on the Jasper Campus; Child Development Chairperson — College Wide" starting March 23, 2001.
Vann was also teaching some child-development and OAD classes. The record reflects that Vann consistently taught various classes, from 4 to 7 classes (for 12 to 21 credit hours) per semester for the fall and spring semesters of 1998 through 2001. She also taught one or two summer classes during that period. In spring 2001, Vann was teaching a total of 15 hours of classes — two child-development classes (6 credit hours) and three OAD classes (9 credit hours). Because Vann had been at BSCC for less than three years, she was a probationary employee.
On April 1, 2001, Vann, along with other probationary employees of BSCC, received a nonrenewal letter from President Wade. On May 1, 2001, Combs, who was a nonprobationary employee, received a letter from President Wade stating that he intended to terminate her employment because of the budget reductions resulting from proration. President Wade also informed Combs that she could contest the termination pursuant to the procedures under the Fair Dismissal Act ("the FDA"), § 36-26-100 et seq., Ala. Code 1975. Combs requested a pretermination hearing before President Wade, and, after the hearing, on June 8, 2001, President Wade terminated Combs's employment. Combs requested an FDA hearing before a three-member employee-review panel as then provided for in § 36-26-105, Ala. Code 1975 (see note 1, supra). *Page 480 
By July 2001, President Wade learned that the prorated level of BSCC's funding would be 6.2%, not 11.8%. Thus, a number of employees, including some probationary employees, were called back to work. Dean Benton recommended to President Wade that he call back Vann and offer her an employment contract for the coming year. Dean Benton believed that Vann was needed as an administrator; however, she also believed that Vann could teach some child-development courses while performing her administrative duties and that she could do so without any increase in pay.
Based on Dean Benton's recommendation, President Wade rehired Vann. President Wade testified that he did not rehire some employees, including Combs, because he believed that proration could last longer than the then current fiscal year.
Combs's FDA hearing was held in October 2001. Following the FDA hearing, two of the three members of the panel voted to uphold President Wade's termination of Combs's employment. The panel's opinion states, in pertinent part:
 "After hearing testimony, considering numerous documents offered into evidence, and the arguments of the parties, the majority of the panel members find:
 ". . . .
 "2) The decisions of Dr. Wade, as to what personnel or what programs to eliminate were decisions within his discretion as President to make. The evidence before the panel demonstrated no abuse of that discretion.
 "3) [Combs] has raised no claim that her termination was the result of political or personal reasons on the part of the President or any administrator who may have recommended her termination. Therefore, the panel finds that the termination was not for political or personal reasons and was not arbitrary or unjust.
 "Ms. Combs has raised an issue related to the retention by [BSCC] of a probationary employee at a branch campus. [BSCC] issued a nonrenewal of contract notice to a Ms. Valerie Vann who worked as an administrator at [BSCC's] Jasper campus in April of 2001. Ms. Vann's nonrenewal notice was issued before Ms. Combs was notified of her proposed termination as a part-time child care instructor.
 "Ms. Combs testified that she was not qualified for the administrative job that Ms. Vann had held at Jasper. Neither Combs nor Vann taught child care at the Jasper campus as that one class was taught by an adjunct instructor.
 "During the summer of 2001, Dr. Wade accepted the recommendation of his Dean at the Jasper campus to reemploy Ms. Vann. That Dean partially convinced Dr. Wade of the wisdom of reemploying Ms. Vann by pointing out [that Vann] could, in addition to her administrative duties, teach the one child care class offered at Jasper that had been taught by the adjunct instructor.
 "The majority of the panel finds that [BSCC] did not retain a probationary child care teacher while terminating the nonprobationary Linda Combs. Instead, [BSCC] rehired/retained a probationary administrator whose position Ms. Combs was not qualified to hold, and then incidentally assigned the teaching of one class at the Jasper branch to that person.
 ". . . .
 "For the above reasons, the under-signed majority of this panel votes to uphold the termination of Ms. Linda *Page 481 
Combs."[3]
Combs petitioned the Walker Circuit Court for review of the panel's decision. Both President Wade and Combs moved for a summary judgment. The trial court entered a summary judgment in favor of President Wade. Combs appealed to the Court of Civil Appeals. The Court of Civil Appeals reversed the trial court's summary judgment in favor of President Wade and remanded the case to the trial court. The Court of Civil Appeals directed the trial court to remand the case to the FDA panel with instructions for the panel to reconsider Combs's termination in light of the dismissal policy contained in the BSCC personnel handbook.957 So.2d at 476. President Wade petitioned this Court for a writ of certiorari.
We granted President Wade's petition for the writ of certiorari to consider whether the Court of Civil Appeals correctly applied the proper standard of review in determining that the trial court had erred in upholding the panel's decision. We conclude that the Court of Civil Appeals did not; therefore, we reverse its judgment.
 II. Standard of Review
In reviewing the Court of Civil Appeals' decision on a petition for the writ of certiorari, "this Court `accords no presumption of correctness to the legal conclusions of the intermediate appellate court. Therefore, we must apply de novo the standard of review that was applicable in the Court of Civil Appeals.'"Ex parte Exxon Mobil Corp., 926 So.2d 303, 308
(Ala. 2005) (quoting Ex parte Toyota Motor Corp.,684 So.2d 132, 135 (Ala. 1996)).
 III. Analysis
The Court of Civil Appeals stated the standard of review as follows:
 "In an FDA case that has been appealed to a circuit court, this court employs the following standard of review:
 "`In reviewing the decision of a hearing panel, this court's standard of review is the same as that of the circuit court's. Colbert County Bd. of Educ. v. Johnson, 652 So.2d 274 (Ala.Civ.App. 1994). Our review is limited to questions of whether there was substantial evidence to support the panel's decision, whether the panel's findings were contrary to the uncontradicted evidence, and whether the panel improperly applied the law to the findings. Jefferson County Bd. of Educ. v. Moore, 706 So.2d 1147 (Ala. 1997).'
 "Bessemer State Tech. Coll. v. Hosea-Studdard, 851 So.2d 46, 51-52
(Ala.Civ.App. 2002)."
957 So.2d at 470-71.[4]
Combs argued to the Court of Civil Appeals that the decision of the FDA panel to uphold the termination of her employment *Page 482 
was not supported by substantial evidence and that its findings are contrary to the uncontradicted evidence. In support of her contentions, Combs pointed to factual misstatements in the opinion issued by the FDA panel.[5] The Court of Civil Appeals agreed with Combs's position that the FDA panel had found that "`[n]either Combs nor Vann taught child care at the Jasper campus as that one class was taught by an adjunct professor.'"957 So.2d at 468. The Court of Civil Appeals determined that this statement by the FDA panel is "plainly and palpably wrong" because the evidence was "undisputed that both Combs and Vann had taught child-development classes at the Jasper campus."957 So.2d at 472. The Court of Civil Appeals then concluded that that factual error had led the FDA panel to the following second erroneous conclusion:
 "[BSCC] did not retain a probationary child care teacher [Vann] while terminating the nonprobationary Linda Combs. Instead, [BSCC] rehired/retained a probationary administrator whose position Ms. Combs was not qualified to hold, and then incidentally assigned the teaching of one class at the Jasper branch to that person."
After determining that the FDA panel had erred in concluding that Vann was an administrator and not a teacher, the Court of Civil Appeals stated:
 "As our supreme court stated in Ex parte Beverly Enterprises[-Alabama, Inc.], 812 So.2d [1189] at 1195 [(Ala. 2001) ], `[w]hen reviewing the decision of an administrative agency . . . an Alabama court will affirm only if the action and the stated basis for the action are correct.' A stated basis for the employee review panel's decision to uphold the termination of Combs's employment — that BSCC `did not retain a probationary child care teacher while terminating the nonprobationary Linda Combs' — was factually incorrect; therefore, `no post hoc rationalizations or theories for [upholding the termination of Combs's employment] can correct it.' Alabama Medicaid Agency v. Beverly Enters., 521 So.2d 1329, 1333
(Ala.Civ.App. 1987)."
957 So.2d at 472.
Having concluded that the FDA panel erred in finding that Vann was an administrator instead of a teacher, the Court of Civil Appeals treated Vann as a teacher when it addressed Combs's second argument, that the FDA panel had erred when it rejected her argument that BSCC was required to follow the dismissal policy[6] outlined in the BSCC personnel handbook. Combs contended that the personnel handbook *Page 483 
does not allow a nonprobationary teacher, whose position is terminated because of proration, to be replaced with a probationary teacher. The Court of Civil Appeals reasoned that the FDA panel's erroneous conclusion that Vann was an administrator led it to conclude that the rehiring of Vann was not prohibited by the dismissal policy.
The Court of Civil Appeals reversed the trial court's judgment and instructed it to remand the case to the FDA panel for the panel to reconsider Combs's termination in light of the dismissal policy that prohibits the replacement of a nonprobationary teacher with a probationary teacher. In doing so, the Court of Civil Appeals impliedly concluded that Vann was a probationary teacher, not a probationary administrator.
President Wade argues that, although the Court of Civil Appeals correctly stated the standard of review, it did not follow that standard of review. We agree.
The FDA panel's conclusion that Vann was an administrator is the stated basis for its decision that Combs was not replaced by a probationary teacher. The crux of the Court of Civil Appeals' opinion is that the FDA panel's error in stating that Vann did not teach child-care classes at the Jasper campus led the FDA panel to mistakenly conclude that Vann was an administrator and not a teacher. We cannot agree with the Court of Civil Appeals that the FDA panel's misstatement of a single fact — that Vann did not teach child-care classes at the Jasper campus — vitiates the substantial evidence that supports the stated basis for its decision that Vann was an administrator.
Although the record reflects that Vann had taught a few child-care classes, the record also clearly reflects that BSCC had hired Vann as an administrator and that she was assigned administrative duties. Vann's job description — "Director of Certificate, Continuing Education and Child Care Programs on the Jasper Campus; Child Development Chairperson — College Wide" — shows that teaching early-childhood courses was but one of 19 duties, 18 of which were administrative. Vann's job description and job titles corroborate the testimony that she was primarily an administrator who incidentally taught some classes. The record also reflects that Vann was consistently paid as an administrator, not as an instructor. Both President Wade and Dean Benton testified that Vann was needed primarily as an administrator. Therefore, the Court of Civil Appeals erred in its conclusion that the FDA panel's misstatement of a single fact was fatal to its decision.
 IV. Conclusion
We conclude that the Court of Civil Appeals erred in reversing the trial court's affirmance of the FDA panel's decision. Therefore, we reverse the Court of Civil Appeals' judgment, and we reinstate the decision of the FDA panel.
REVERSED AND JUDGMENT RENDERED.
NABERS, C.J, and LYONS, HARWOOD, WOODALL, SMITH, BOLIN, and PARKER, JJ, concur.
[1] See § 36-26-105, Ala. Code 1975 (before a 2004 amendment, this section stated, in pertinent part, that the discharged employee may appeal and "the employing board and the employee may . . . select a panel of three persons, one selected by the employing board, and another selected by the employee and a third agreed upon by the two parties listed hereinabove which shall constitute an employee review panel to hear the employee's appeal"); and § 36-26-106, Ala. Code 1975 (before a 2004 amendment, this section stated, in pertinent part, that "the panel shall consider whether the action of the board or its administrative staff was arbitrary or unjust or for political or personal reasons on the part of any member of the board or its staff and whether the board's action was warranted based upon the facts of the case and the employment record of the employee. The decision of the panel shall be final and binding upon the parties.").
[2] The record does not indicate what "OAD" stands for; however, the classes Vann taught (keyboarding and transcription) appear in the course catalogue as classes offered in the office-administration program available at BSCC.
[3] One member of the panel dissented from the majority decision, with a written opinion; that opinion states, in pertinent part:
 "The majority opinion leads one to believe that because the employee that took over the childcare program once Ms. Combs was terminated was a probationary administrator, then probationary status does not matter. I completely dissent from this opinion. Both Ms. Combs and the probationary employee, Ms. Vann were instructors. President Wade made the decision to retain a probationary instructor over a nonprobationary instructor, which is against standard practice in reduction-in-force policies statewide. Ms. Camille Benton, who is an administrator at [BSCC] stated that other current administrators could have absorbed the additional administrative duties held by the probationary employee, Ms. [Valerie] Vann. President Wade did not take this into consideration in terminating the tenured employee, Ms. Linda Combs."
[4] Section 36-26-105, Ala. Code 1975, was amended effective July 1, 2004, to provide for direct, discretionary review of decisions of an FDA panel by the Alabama Court of Civil Appeals and to change the standard of review. The FDA panel decided this case on June 25, 2002, before the effective date of the amendment; therefore, the applicable standard of review is the pre-July 1, 2004, standard of review recited by the Court of Civil Appeals.
[5] In addition to the two factual errors addressed below, the Court of Civil Appeals held that the FDA panel's finding that "Combs testified that she was not qualified for the administrative jobs that Ms. Vann had held at Jasper" was a misstatement of fact. The Court of Civil Appeals reasoned that because the issue was not whether Combs was denied Vann's position as an administrator, the error was harmless.
[6] Combs also argued to the Court of Civil Appeals that the reduction-in-force ("RIF") policy in the BSCC personnel handbook applied to her and required BSCC to consider her nonprobationary status before terminating her employment on the basis of proration and rehiring Vann to fill Combs's position.Combs, 957 So.2d at 472-73. BSCC argued that the RIF policy did not apply to Combs because, it said, she was a part-time employee and the RIF applied only to full-time employees. The Court of Civil Appeals noted that BSCC's contention that Combs was a part-time employee was inconsistent with its other position that the FDA, which applies only to full-time employees, applied to Combs. Combs, however, did not argue that BSCC is estopped to assert that she is part-time for purposes of the RIF policy, and the Court of Civil Appeals did "not address the legal effect of the apparent inconsistency."Combs, 957 So.2d at 474. Thus, the Court of Civil Appeals considered only Combs's argument that the dismissal policy in the BSCC personnel handbook applied to her. *Page 484