957 So.2d 1143 (2006)
Valerie GLASS
v.
ANNISTON CITY BOARD OF EDUCATION.
2040725.
Court of Civil Appeals of Alabama.
October 27, 2006.
*1144 Charles F. Norton, Alabama Education Association, Montgomery; William J. Miller of Turner & Miller, LLC, Anniston; and Sam Heldman of Gardner, Middle-brooks, Gibbons, Kittrell, Olsen, Walker & Hill, P.C., Washington, D.C., for appellant.
James M. Campbell of Campbell & Hopkins, Anniston; and Burgin H. Kent of Bishop, Colvin, Johnson & Kent, Birmingham, for appellee.
BRYAN, Judge.
Valerie Glass appeals a judgment of the Calhoun Circuit Court affirming a hearing officer's decision upholding the decision of the Anniston City Board of Education ("the Board") to terminate Glass's position as an attendance officer. We affirm.
At the time her position as an attendance officer was eliminated, Glass had been employed with the Board for 21 years. She had held the position of an attendance officer since 1998. Glass's duties as an attendance officer included maintaining student records regarding attendance, initiating investigations regarding truancy, and filing pleadings in juvenile court.
*1145 Dr. Sammy Lee Felton, the superintendent of education of the Anniston City School System ("the school system"), delivered a letter dated May 7, 2003, to Glass notifying her of his recommendation to the Board to terminate her position. Dr. Felton delivered an additional letter to Glass dated May 29, 2003, stating the reasons for his recommendation.
On June 12, 2003, the Board held a hearing to consider whether to dismiss Glass, as well as several other employees, pursuant to Dr. Felton's recommendation. The pleadings indicate that on June 16, 2003, the Board voted to eliminate Glass's position as an attendance officer.[1] Glass then requested a hearing pursuant § 36-26-105, Ala.Code 1975, of the Fair Dismissal Act ("FDA"), codified at § 36-26-100 et seq., Ala.Code 1975.
On October 9, 2003, a hearing officer received evidence regarding the Board's decision to eliminate Glass's position. On November 3, 2003, the hearing officer issued a decision affirming the Board's decision. On December 2, 2003, Glass petitioned the trial court for a writ of certiorari to review the hearing officer's decision, and on January 23, 2004, the trial court granted the writ. On December 15, 2004, the trial court entered a judgment affirming the decision of the hearing officer. Glass moved the trial court pursuant to Rule 59, Ala. R. Civ. P., to "reconsider" its judgment. That motion was denied by operation of law. Glass then timely appealed to this court.

I.
On appeal, Glass first argues that her dismissal as an attendance officer is subject to the provisions of the FDA.[2] We agree.
The FDA sets forth procedures and grounds governing, among other things, the dismissal of certain public employees. "`The purpose of the [Fair Dismissal Act] is to provide nonteacher employees a fair and swift resolution of any disputes regarding employment terminations.'" Tatum v. Freeman, 893 So.2d 1213, 1222 (Ala.Civ.App.2004) (quoting Jones v. Kennedy, 890 So.2d 975, 979 (Ala. 2004), citing in turn Bolton v. Board of School Comm'rs of Mobile County, 514 So.2d 820, 824 (Ala.1987)).
In 1983, the legislature enacted the FDA. See Act No. 83-644, Ala. Acts 1983. Act No. 83-644, § 1, as codified as XX-XX-XXX, Ala.Code 1975, stated:
"The term `employees,' as used in this article, is deemed to mean and include all persons employed by county and city boards of education, two-year educational institutions under the control and auspices of the State Board of Education, the Alabama Institute for Deaf and Blind not to include production workers at the Alabama Industries for the Blind, [and] educational and correctional institutions under the control and auspices of the Alabama Department of Youth Services, who are so employed as bus drivers, lunchroom or cafeteria workers, maids and janitors, custodians, maintenance personnel, secretaries and clerical assistants supervisors and all other persons not otherwise certified by the State Board of Education. Only full-time employees who are not otherwise covered by the state Merit System, the teacher tenure law, or other state statute at the *1146 time this article is adopted are intended to be covered by this article. Full-time employees include (a) adult bus drivers and (b) other employees whose duties require 20 or more hours in each normal working week of the school term, employing board holidays excepted. Substitute teachers and substitute employees are excluded from the article."
(Emphasis added.)
In Stephenson v. Lawrence County Board of Education, 782 So.2d 192, 199-200 (Ala.2000), our supreme court held that the FDA did not govern the dismissal of the employee in that case because the dismissal of that employee was covered by some "other state statute" within the meaning of § 36-26-100.
In 2002, the legislature amended § 36-26-100 of the FDA in Act No. 2002-508, Ala. Acts 2002. According to the title of Act No. 2002-508, the stated purpose of that act is
"[t]o amend Section 36-26-100, Code of Alabama 1975, relating to the Fair Dismissal Act, to expressly provide that production workers at the Alabama Industries for the Blind and instructors are included in the definition of employee and to remove certain application exceptions."
(Emphasis added.) Section 36-26-100, as amended, currently provides:
"The term `employees,' as used in this article, is deemed to mean and include all persons employed by county and city boards of education, two-year educational institutions under the control and auspices of the State Board of Education, the Alabama Institute for Deaf and Blind, including production workers at the Alabama Industries for the Blind, and educational and correctional institutions under the control and auspices of the Alabama Department of Youth Services, who are so employed by any of these employers as bus drivers, lunchroom or cafeteria workers, maids and janitors, custodians, maintenance personnel, secretaries and clerical assistants, full-time instructors as defined by the State Board of Education, supervisors, and all other persons not otherwise certified by the State Board of Education. Only full-time employees who are not otherwise covered by the state Merit System or the teacher tenure law at the time this article is adopted are intended to be covered by this article. Full-time employees include (1) adult bus drivers and (2) other employees whose duties require 20 or more hours in each normal working week of the school term, employing board holidays excepted. Substitute teachers and substitute employees are excluded from this article."
§ 36-26-100, Ala.Code 1975 (emphasis added.)
Both parties concede that Glass's dismissal is not covered under the state Merit System or the Teacher Tenure Act. However, Glass argues that, although other state statutes, namely §§ 16-11-17[3] and 16-28-19,[4] Ala.Code 1975, address the dismissal *1147 of an attendance officer, it was the legislature's intent in amending § 36-26-100 in 2002 to delete the phrase "other state statute" to include employees such as Glass within the purview of the FDA. Therefore, the issue before this court is whether the legislature, by deleting that phrase in the 2002 amendment to § 36-26-100, intended that the FDA would govern the dismissal of an employee who was once governed by some "other state statute" within the meaning of Act No. 83-644.
"The intent of the Legislature is the polestar of statutory construction." Siegelman v. Alabama Ass'n of Sch. Bds., 819 So.2d 568, 579 (Ala.2001) (citing Richardson v. PSB Armor, Inc., 682 So.2d 438, 440 (Ala.1996); Jones v. Conradi, 673 So.2d 389, 394 (Ala.1995); and Ex parte Jordan, 592 So.2d 579, 581 (Ala.1992)). We are mindful that "the Legislature will not be presumed to have done a futile thing in enacting a statute; there is a presumption that the Legislature intended a just and reasonable construction and did not enact a statute that has no practical meaning." Weathers v. City of Oxford, 895 So.2d 305, 309 (Ala.Civ.App.2004) (citing Ex parte Watley, 708 So.2d 890 (Ala. 1997), and Ex parte Meeks, 682 So.2d 423 (Ala.1996)).
The Court of Appeals of North Carolina has stated:
"[I]f the legislature deletes specific words or phrases from a statute, it is presumed that the legislature intended that the deleted portion should no longer be the law. See, e.g., Joe v. Lebow, 670 N.E.2d 9, 19 (Ind.Ct.App.1996) ('When a statute contains language which is deleted by the legislature, we presume that the legislature intended the deletion to represent a change in the law.'); State v. Eversole, 889 S.W.2d 418, 425 (Tex.App. 1994) (`[W]hen the legislature amends a particular statute and omits certain language of the former statute in its amended version, the legislature specifically intended that the omitted portion is no longer the law. Every word excluded from a statute must be presumed to have been excluded for a reason.')."
Nello L. Teer Co. v. North Carolina Dep't of Transp., 175 N.C.App. 705, 710-11, 625 S.E.2d 135, 138 (2006).
In Nello L. Teer Co., the North Carolina Court of Appeals concluded that the North Carolina legislature intended to change a law by deleting a phrase North Carolina courts had previously relied upon. The appellant in Nello L. Teer Co. argued that, according to § 136-29, N.C. Gen.Stat., filing a verified complaint within a specified period of time was a condition precedent to pursuing an action against a certain North Carolina state agency. 175 N.C.App. at 707-11, 625 S.E.2d at 137-38. North Carolina courts had previously held that, pursuant to specific language in § 136-29, filing a verified complaint within the specified period was a condition precedent to pursuing an action against that agency. 175 N.C.App. at 709, 625 S.E.2d at 138. However, the North Carolina legislature had amended § 136-29 by deleting the specific language that the courts had previously relied upon. Id. Thus, the Nello L. Teer Co. court concluded that the legislature, by deleting the phrase previously relied upon, intended to change the law to remove that condition precedent. Id.; see also Grigerik v. Sharpe, 247 Conn. 293, *1148 721 A.2d 526 (1998) (concluding that the Connecticut legislature's deleting certain statutory language that Connecticut courts had previously relied upon evidenced the legislature's intent to change the law); Dix v. Superior Court, 53 Cal.3d 442, 461-62, 807 P.2d 1063, 1073, 279 Cal.Rptr. 834, 844 (1991) ("We presume the Legislature intends to change the meaning of a law when it alters the statutory language . . ., as for example when it deletes express provisions of the prior version. . . . Because the Legislature is presumed [to be] aware of prior judicial constructions of a statute, the inference of altered intent is particularly compelling when, as in this case, the omitted word or phrase was significant to such a construction."); and United States v. NEC Corp., 931 F.2d 1493, 1502 (11th Cir. 1991) (concluding that "[w]here, as here, the legislature deletes language that contained a general prohibition and replaces it with a grant of jurisdiction followed by certain enumerated exceptions, it is logical for a court to conclude that Congress intended to do away with the general prohibition").
Regarding the case now before us, the legislature in amending § 36-26-100 in 2002 explicitly included within the purview of the FDA employees who had previously been explicitly excluded under that statute, i.e., production workers at the Alabama Industries for the Blind and employees at educational and correctional institutions under the control of the Alabama Department of Youth Services. Furthermore, the title to Act No. 2002-508, which amended § 36-26-100, specifically states that the purpose of the amendment was to include within the purview of the FDA the above-described employees who were previously excluded. Thus, the legislature's intent is evident both in the title to Act No. 2002-508 and in the language of the amended statute: to broaden the scope of employees who are covered under the FDA.
Moreover, the legislature deleted the phrase "or other state statute," the very phrase our supreme court relied upon in Stephenson to conclude that the employee in that action was not covered under the FDA. That deletion is not a futile act. See Weathers, supra. It is purposeful. See, e.g., Nello L. Teer Co., supra; Grigerik, supra. It was intended to change the law to eliminate that restriction previously relied upon in Stephenson. Consequently, we conclude that the legislature intended that the FDA would govern dismissals of employees as defined under the FDA even though the dismissal of such employees is covered under some "other state statute."

II.
Glass also argues that her dismissal was not premised on the grounds enumerated in § 36-26-102, Ala.Code 1975, of the FDA.
This court's standard of review of the trial court's judgment affirming the hearing officer's decision is as follows:
"`In an FDA case that has been appealed to a circuit court, this court employs the following standard of review:
"`"In reviewing the decision of a hearing [officer], this court's standard of review is the same as that of the circuit court's. Colbert County Bd. of Educ. v. Johnson, 652 So.2d 274 (Ala. Civ.App.1994). Our review is limited to questions of whether there was substantial evidence to support the [hearing officer's] decision, whether the [hearing officer's] findings were contrary to the uncontradicted evidence, and whether the [hearing officer] improperly applied the law to the findings. Jefferson County Bd. of Educ. v. Moore, 706 So.2d 1147 (Ala. 1997)."

*1149 "`Bessemer State Tech. Coll. v. Hosea-Studdard, 851 So.2d 46, 51-52 (Ala.Civ. App.2002).'"
Ex parte Wade, 957 So.2d 477, 481 (Ala.2006)(quoting Combs v. Wade 957 So.2d 464, 471 (Ala.Civ.App.2005)). Furthermore,
"`[a]s our supreme court stated in Ex parte Beverly Enterprises[-Alabama, Inc.], 812 So.2d [1189] at 1195 [(Ala. 2001)], "[w]hen reviewing the decision of an administrative agency . . . an Alabama court will affirm only if the action and the stated basis for the action are correct."'"
Ex parte Wade, 957 So.2d at 482 (quoting Combs v. Wade, 957 So.2d at 471).
Section 36-26-102 sets forth the grounds on which a nonprobationary employee under the FDA may be dismissed. That section provides:
"Upon the completing by the employee of said probationary period, said employee shall be deemed employed on a nonprobationary status and said employee's employment shall thereafter not be terminated except for failure to perform his or her duties in a satisfactory manner, incompetency, neglect of duty, insubordination, immorality, justifiable decrease in jobs in the system, or other good and just causes; provided, however, such termination of employment shall not be made for political or personal reasons on the part of any party recommending or voting to approve said termination."
(Emphasis added.)
It is undisputed that Glass would qualify as a nonprobationary employee under the FDA because she has surpassed the probationary period for such employees. See § 36-26-101(a) ("All employees as defined in Section 36-26-100 shall be deemed employed on a probationary status for a period not to exceed three years from the date of his or her initial employment, or a lesser period which may be fixed by the employing authority.").
At the proceeding before the hearing officer, the hearing officer received evidence indicating that the Board had implemented a "Restructuring for Improvement Revised Plan" ("the Plan") that eliminated various positions, including the position of attendance officer, within the school system. Dr. Felton testified that the Board had implemented the Plan, in part, because the Board had received approximately $500,000 to $550,000 less from the City of Anniston than it had received in the prior year. In addition, the Board initially had anticipated receiving fewer funds from the state. However, there was no actual loss in state funds.
Dr. Felton testified that the position of attendance officer could only be paid for with local funds. Dr. Felton further testified that, because the Board had incurred a decrease in local funds, it voted to eliminate the position of attendance officer. In place of the position of attendance officer, the Board created the position of supervisor of maintenance, safety, student services, and transportation and assigned the duties of an attendance officer to the person holding that position. The Board created that new position because the Board could pay for the new position with state and federal funds. However, the Board then transferred the responsibility for fulfilling the duties of the attendance officer from the person holding that new position to Dr. Joan Frazier, the director of federal programs and student services. Dr. Frazier assigned various duties of an attendance officer to parent specialists, who are under her direction. Evidence was introduced indicating that the Board could use federal funds to pay for the position of parent specialist.
Glass received a letter from Dr. Felton dated May 7, 2003, notifying her of the *1150 Board's intent to eliminate the position of attendance officer and informing her of the Board's intent to dismiss her. That letter stated, in pertinent part:
"The Board of Trustees of the Anniston City School [System] at its meeting May 6, 2003, voted on my recommendation a reduction-in-force for the 2003-2004 school year which influences your current position. The action is not a performance-based decision. The action is based upon Restructuring for Improvement Plan Revised Plan dated April 16, 2003. The action is taken under the school district's reduction-in-force policy."
In a letter dated May 29, 2003, Dr. Felton stated the following regarding the termination of Glass's employment:
"I previously wrote you a letter informing you of the proposed termination of your employment. The reason for the proposed termination is a justifiable decrease in jobs in the system. Specifically[,] the Anniston City School System is anticipating a severe reduction in the amount of funds available for the coming school year."
Dr. Felton testified that, although he notified Glass in the May 29 letter that he was recommending to the Board that it eliminate her position due to a justifiable decrease in jobs in the system as the result of "anticipating a severe reduction in the amount of funds available for the coming year," at the time of the proceeding before the hearing officer, the Board was not "anticipating a severe reduction in the amount of funds available for the coming year." Furthermore, the Board did not implement a reduction-in-force policy. However, Dr. Felton testified that there was a net loss in the total number of jobs within the school system.
Glass introduced a transcript of the termination hearing of another employee, Benjamin Cunningham, who was also employed by the Board as a manager of computer technology. Dr. Felton testified that Cunningham's position was not eliminated because of a loss of fund but that that position was eliminated due to a restructuring of funds. Dr. Felton further testified that he recommended that the Board eliminate Cunningham's position for the same reason he recommended that it eliminate Glass's position: it would be a more efficient use of resources to eliminate certain positions and transfer the remaining duties to employees in existing positions.
In his decision, the hearing officer, relying on the language of § 36-26-100 before it was amended in 2002, concluded that the FDA does not apply because, pursuant to § 36-26-100 before it was amended in 2002, the FDA only applied to "full-time employees who are not otherwise covered by the state Merit System, the teacher tenure law, or other state statute." He concluded that the FDA was inapplicable to Glass as an attendance officer because her position was governed by some "other state statute" and, therefore, that she was an at-will employee. However, the hearing officer also concluded that, even if the FDA applied to Glass's dismissal, the Board's reason for dismissing Glassi.e., a "justifiable decrease in jobs in the system"was not arbitrary or unjust. He also concluded that there was evidence tending to establish that the Board had suffered a decrease in local funds, which justified the Board's decision to terminate Glass's position. Furthermore, he also concluded that the Board's elimination of the position of attendance officer and its assignment of those duties to other employees to more efficiently use its current employees also constituted a justifiable decrease in jobs in the system.
In affirming the hearing officer's decision, the trial court's judgment states that *1151 the FDA does not apply to Glass as an attendance officer and, therefore, that she was an at-will employee pursuant to § 16-28-19. The judgment further states that, even if the FDA applies to Glass, the evidence tended to establish that the school system had received fewer funds from the city than in the prior year and, therefore, that the Board's decision was warranted due to a justifiable decrease in jobs in the system.
Dr. Felton's May 7 letter stated that he was recommending terminating Glass's position due to implementation of a reduction-in-force policy. However, the evidence established that the Board did not implement a reduction-in-force policy. Nevertheless, Dr. Felton stated in his May 29 letter that Glass's position was being eliminated due to a "justifiable decrease in jobs in the system" because the school system was anticipating "a severe reduction in the amount of funds available for the coming school year." Although the evidence established that there had not been "a severe reduction in the amount of funds" received from the state, the evidence did establish that the Board had incurred a decrease in local funds. Furthermore, the evidence established that Glass's position was funded solely by local funds. Thus, the hearing officer's finding that the Board had incurred a decrease in local funds that constituted a justifiable decrease in jobs in the system is supported by substantial evidence. See Woodham v. Alabama Aviation & Technical Coll., 537 So.2d 934, 935 (Ala.Civ.App.1988)(concluding that the employer could provide a second notice to an employee when the underlying basis of the dismissal continued to be a justifiable decrease in jobs in the system).
Additionally, Dr. Felton testified that, based on the Board's Plan, Glass's position was eliminated because it would be more efficient to assign the duties of an attendance officer to parenting specialists. There is no evidence to the contrary. Thus, substantial evidence supports the hearing officer's finding that the Board assigned the duties of an attendance officer to other employees to more efficiently utilize the Board's current resources. Consequently, the hearing officer's decision that Glass's dismissal was based upon a "justifiable decrease in jobs in the system" is supported by substantial evidence.

III.
Glass also argues that the hearing officer erred in determining that the FDA was inapplicable to her. The hearing officer concluded (1) that the FDA does not apply to Glass because her position was covered by some "other state statute" and (2) that, even if the FDA applies, Glass's dismissal was in accordance with the FDA. Although the hearing officer applied the version of § 36-26-100 in effect before the 2002 amendment to that section, we conclude that the application of that version was harmless error because the hearing officer correctly concluded that, if the FDA is applicable, substantial evidence supports a determination that Glass's dismissal was in accordance with the FDA. See Rule 45, Ala. R. App P.

IV.
Glass also argues that her dismissal was not in accordance with § 36-26-103 of the FDA. Specifically, she argues that the reasons stated in Dr. Felton's letters regarding Glass's dismissal were not the basis of her dismissal.
At the time of Glass's dismissal, § 36-26-103 provided, in pertinent part:
"The employing board of education shall give notice in writing to the employee, stating in detail the reasons for the proposed termination, the facts upon which such reasons are based, and giving *1152 notice of the employee's rights to a hearing as set out herein."[5]
As previously discussed, Dr. Felton stated the reasons for Glass's dismissala justifiable decrease in jobs in the systemin his May 29 letter. Even though Dr. Felton's reason for a justifiable decrease in jobs in the system changed, as we have previously discussed, we find this change immaterial. See Woodham, supra.

V.
Last, Glass argues that the trial court erred in affirming the decision of the hearing officer because, she says, the elimination of an attendance officer is in violation of §§ 16-12-18 and 16-28-19, Ala. Code 1975, requiring boards to appoint an attendance officer.
Section 16-12-18 provides:
"The city superintendent of schools shall recommend the employment of one or more attendance officers, subject to the rules of the city board of education, and shall see to it that the provisions of law for school attendance are enforced."
Furthermore, § 16-28-19 provides:
"The county board of education shall arrange the county, exclusive of cities, into one or more attendance districts, and said board shall appoint an attendance officer for every district created, who shall hold his office at the will of the county board of education, and the board of education of each city having a city board of education shall appoint one or more attendance officers to serve at the pleasure of the appointing board. City and county boards of education and county commissions may jointly employ any person or persons to carry out the provisions of this chapter and such additional duties as may be assigned them by such boards or county commissions."
(Emphasis added.)
In the case now before us, Dr. Felton testified that the Board had eliminated the position of attendance officer. Furthermore, Dr. Felton had assigned the duties of the attendance officer to Dr. Frazier, who, in turn, assigned those duties to parent specialists. Because § 16-28-19 specifically allows school boards to jointly employ other employees to carry out the provisions of Title 16, Chapter 28, Ala.Code 1975, we conclude that the Board could assign the duties of an attendance officer to other employees of the Board. Consequently, the Board did not violate § 16-12-18 or § 16-28-19 by eliminating the position of attendance officer.

VI.
Based on this court's affirmance of the trial court's judgment affirming the hearing officer's decision, we deny Glass's request to reinstate her position with full back pay and benefits.
AFFIRMED.
THOMPSON and PITTMAN, JJ., concur.
CRAWLEY, P.J., concurs specially, with writing.
MURDOCK, J., concurs in part and concurs in the result, with writing.
CRAWLEY, Presiding Judge, concurring specially.
I agree with the main opinion that the 2002 amendment to § 36-26-100, Ala.Code 1975, extended the procedural safeguards of the FDA to school attendance officers. *1153 Before the amendment, attendance officers served "at the pleasure of the appointing board," see § 16-28-19, Ala.Code 1975, and were, therefore, "at-will" employees, see, e.g., DeWitt v. Gainous, 628 So.2d 418, 420 (Ala.1993) (holding that a junior college president who served at the pleasure of the employing board was an at-will employee).
Now, after the amendment, school attendance officers can be dismissed, pursuant to the FDA, only for certain enumerated causes:
"[A]fter a[n] . . . employee attains non-probationary status, the `employee's employment shall thereafter not be terminated except for [1] failure to perform his or her duties in a satisfactory manner, [2] incompetency, [3] neglect of duty, [4] insubordination, [5] immorality, [6] justifiable decrease in jobs in the system, [7] or other good and just causes. . . .' Ala.Code (1975), § 36-26-102."
Woodham v. Alabama Aviation & Technical Coll., 537 So.2d 934, 936 (Ala.Civ.App. 1988).
Glass argues that because §§ 16-12-18 and 16-28-19 require the Board to appoint an attendance officer, the Board had no authority to eliminate that position. Thus, Glass maintains, there cannot be a "justifiable decrease in [attendance officer] jobs in the system."
Although, strictly speaking, the Board did "eliminate the position" of attendance officer, it did not eliminate the duties of the attendance officer, opting instead to consolidate positions and to assign attendance-officer duties to other employees as a cost-saving measure. I concur with the main opinion because to hold that such an efficient use of resources violates the will of the legislature would be to elevate form over substance in the extreme.
MURDOCK, Judge, concurring in part and concurring in the result.
I concur in Part I of the main opinion, and I concur in the result reached by that opinion.
Section 16-28-19, Ala.Code 1975, provides that a city board of education shall appoint "one or more attendance officers" to carry out the duties prescribed by Chapter 28 of Title 16 of the Alabama Code. Section 16-28-19 also expressly contemplates that the "person or persons" employed to carry out those duties simultaneously may be employed to carry out "such additional duties as may be assigned them" by the school board. I see nothing contrary to these provisions in the manner in which the school board in this case has arranged for the performance of the duties prescribed by Chapter 28 for attendance officers.
NOTES
[1] Glass was subsequently rehired as a secretary.
[2] The Board voted to eliminate Glass's position as an attendance officer before July 1, 2004, the date certain amendments to the FDA became effective. See Act No. 2004-567, Ala. Acts 2004. Pursuant to § 36-26-116(a), the 2004 amendments to the FDA do not apply to this case; rather, the version of the FDA in effect before July 1, 2004, applies.
[3] Section 16-11-17 provides:

"The city board of education shall fix the salaries of all employees and may suspend or dismiss any principal or teacher or supervisor or attendance officer or other regular employee so appointed on the written recommendation of the city superintendent of schools for immorality, misconduct in office, incompetency, willful neglect of duty or when, in the opinion of the board, the best interests of the schools may require, subject to the provisions of Chapter 24 of this title."
[4] Section 16-28-19 provides:

"The county board of education shall arrange the county, exclusive of cities, into one or more attendance districts, and said board shall appoint an attendance officer for every district created, who shall hold his office at the will of the county board of education, and the board of education of each city having a city board of education shall appoint one or more attendance officers to serve at the pleasure of the appointing board. City and county boards of education and county commissions may jointly employ any person or persons to carry out the provisions of this chapter and such additional duties as may be assigned them by such boards or county commissions."
[5] Section 36-26-103, Ala.Code 1975, has been amended by Act No. 2004-567, Ala. Act 2004, effective July 1, 2004. The Code section has been substantially rewritten, and § 36-26-103 no longer contains this specific language. See note 2.